**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

SERGEY NEFEDOV,

          *Plaintiff*,

    v.

JUDY KUO et al.,

          *Defendants*.

Civil Action No. 23-3433 (TJK)

**MEMORANDUM**

Plaintiff is a Russian citizen who seeks to compel action on his application for an O-1 nonimmigrant visa.  According to his complaint, in April 2023, he was interviewed at the U.S. Embassy in Kazakhstan in connection with his application.  After the interview, the consular officer informed him that his application was being placed in "administrative processing."  In November 2023, seven months later, he sued the Secretary of State and the Deputy Chief of Mission at the U.S. Embassy in Kazakhstan.  Defendants move to dismiss for lack of subject-matter jurisdiction and for failure to state a claim.  For the reasons explained below, the Court will grant the motion and dismiss the case.

## I.    Legal Standards

To survive a Rule 12(b)(1) motion to dismiss, a plaintiff must establish the Court's subject-matter jurisdiction.  *Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015).  When evaluating a Rule 12(b)(1) motion, the Court "assume[s] the truth of all material factual allegations in the complaint and 'construe[s] the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged,' . . . and upon such facts determine[s] jurisdictional questions." *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting *Thomas v. Principi*,

394 F.3d 970, 972 (D.C. Cir. 2005)).  Without subject-matter jurisdiction over a claim, the Court must dismiss it.  *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006).

Under Rule 12(b)(6), a defendant can move to dismiss an action for "failure to state a claim upon which relief can be granted."  To survive at this stage, a complaint must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "[T]he Court must construe the complaint 'in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged.'"  *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012) (quoting *Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979)).  Yet even assuming all the facts are true, the complaint has to "raise a right to relief above the speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "[M]ere conclusory statements" will not be enough to establish that a claim is plausible on its face.  *Iqbal*, 556 U.S. at 678.

## II.  Analysis

The Court has subject-matter jurisdiction over Plaintiff's claims of unreasonable delay in processing his visa application against the Deputy Chief of Mission at the U.S. Embassy in Kazakhstan, although not over those against the Secretary of State.  But he has failed to state a claim for unreasonable delay.  So while Defendants raise several other non-jurisdictional arguments for dismissal in their motion, the Court need not address them.  *See, e.g.*, *Dastagir v. Blinken*, 557 F. Supp. 3d 160, 168 n.6 (D.D.C. 2021).

### A.  Plaintiff Lacks Standing to Sue the Secretary of State

Under Article III of the Constitution, federal courts "may only adjudicate actual, ongoing controversies," *Honig v. Doe*, 484 U.S. 305, 317 (1988), of which "the core component of standing is an essential and unchanging part," *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).  To establish standing, a plaintiff must have "(1) suffered an injury in fact, (2) that is fairly traceable

to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). Standing "is not dispensed in gross." *Town of Chester v. Laroe Ests., Inc.*, 581 U.S. 433, 439 (2017) (citation omitted). That is, standing "must be demonstrated for each claim against each defendant." *Whitlock v. DHS*, No. 21-cv-807 (DLF), 2022 WL 424983, at *4 (D.D.C. Feb. 11, 2022).

Defendants argue that Plaintiff lacks standing because aliens have no right to a visa or to travel to the United States, and so Plaintiff has failed to plead a cognizable injury in fact. As many judges in this District have found, they are mistaken. True, when a plaintiff sues based on a "procedural injury," like an unreasonable delay, that harm "must be tethered to some concrete interest adversely affected by the procedural deprivation." *WildEarth Guardians v. Jewell*, 738 F.3d 298, 305 (D.C. Cir. 2013). But Plaintiff has made that showing. He alleges that he "and his family are facing significant personal, emotional, and financial hardship due to the delay," such as Plaintiff's inability "to earn a better income" and "to complete research, work, and further pursue his career and studies." ECF No. 1 ¶¶ 1–3. And this kind of "monetary harm[]" has been held to "readily qualify as [a] concrete injur[y] under Article III." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021). Other judges in this District have consistently held likewise in the visa-delay context. *See, e.g.*, *Khazaei v. Blinken*, No. 23-cv-1419 (JEB), 2023 WL 6065095, at *4 (D.D.C. Sept. 18, 2023) (holding that Iranian nationals' concrete professional and financial interests were sufficiently tethered to their procedural right to a reasonably expeditious agency adjudication).[1]

---

[1] Defendants also argue that the redressability prong is not met because an order compelling further processing might not result in a decision in Plaintiff's favor. *See* ECF No. 8 at 25–26. But Plaintiff "seek[s] final adjudication of [his] application[;] not a specific outcome." *Afghan & Iraqi Allies Under Serious Threat Because of Their Faithful Serv. to the U.S. v. Pompeo*, No. 18-cv-1388 (TSC), 2019 WL 367841, at *8 (D.D.C. Jan. 30, 2019). And *that* "injury—the lack of adjudication—[can] be redressed." *Id.*

Defendants also argue that Plaintiff lacks standing to bring his claims against the Secretary of State specifically.  As noted above, to establish standing as to a particular defendant, Plaintiff must show that his injuries are "causal[ly] connect[ed]" to each defendant's conduct and "likely" can be "redressed by a favorable decision." *Lujan*, 504 U.S. at 560–61 (citation omitted).

The Court agrees that Plaintiff lacks standing to sue the Secretary of State because he has failed to establish the causation and redressability prongs against him.  Indeed, the Secretary of State's role in the visa-adjudication process has been circumscribed by statute.  As the D.C. Circuit has held, the Immigration and Nationality Act ("INA") "grants consular officers 'exclusive authority to review applications for visas, precluding even the Secretary of State from controlling their determinations.'" *Nusrat v. Blinken*, No. 21-cv-2801 (TJK), 2022 WL 4103860, at *4 (D.D.C. Sept. 8, 2022) (quoting *Baan Rao Thai Rest. v. Pompeo*, 985 F.3d 1020, 1024 (D.C. Cir. 2021) and *Saavedra Bruno v. Albright*, 197 F.3d 1153, 1156 (D.C. Cir. 1999)).  "Because only the consular offices, and not the Department of State, can grant [Plaintiff's] application[,] . . . [he] cannot show that his injury is redressable by the [Secretary of State]." *Siddiqui v. Blinken*, 646 F. Supp. 3d 69, 75 (D.D.C. 2022).[2]

The Deputy Chief of Mission at the U.S. Embassy in Kazakhstan is a different story.  Plaintiff alleges that she has a "leadership role within the component of [the State Department] in

---

[2] Plaintiff argues that the Secretary can redress his injury because the Secretary, as "the ultimate authority in managing the agency's administration," can "issue[] directives with respect to administration and management."  ECF No. 9 at 13; *see also Al-Gharawy v. DHS*, 617 F. Supp. 3d 1, 10 (D.D.C. 2022) ("[N]othing . . . precludes the Secretary . . . from directing consular officers 'to conclude . . . matter[s] presented to [them]' 'within a reasonable time.'" (quoting 5 U.S.C. § 555(b))).  But focusing on the statutory text, the Secretary is expressly precluded from those "powers, duties, and functions . . . *relating to* the granting or refusal of visas," which would include administrative guidance for the pace of adjudicating visas or completing administrative processing. 8 U.S.C. § 1104(a) (emphasis added).  Thus, the Secretary of State's ability to redress Plaintiff's alleged injury has been circumscribed by statute.

Kazakhstan, which is responsible for processing and adjudicating visa applications." ECF No. 1 ¶ 9. And unlike the Secretary of State, who has been statutorily excluded from the visa adjudication process, the Deputy Chief of Mission may enforce duties relating to visa adjudications because she appears to qualify as a "commissioned consular officer[]" with authority over visa adjudications. 22 C.F.R. § 40.1(d); *see also Ameer v. Schofer*, No. 23-cv-3066 (TNM), 2024 WL 2831464, at *4 (D.D.C. June 4, 2024) ("Nothing in [8 U.S.C.] § 1104(a) purports to limit the Deputy's authority in the administration and enforcement of 'duties . . . relating to the granting or refusal of visas.'"). Thus, a court order directed at the Deputy Chief of Mission could redress Plaintiff's injuries. And so Plaintiff has standing as to the Deputy Chief of Mission. *Cf. Logan v. Blinken*, No. 21-cv-2275 (FYP), 2022 WL 3715798, at *1, *3 (D.D.C. Aug. 29, 2022) (dismissing certain defendants but not Deputy Chief of Mission on standing grounds).

**B.    Plaintiff Has Failed to State a Claim Against the Deputy Chief of Mission for Unreasonable Delay Under the Mandamus Act or the APA**

Plaintiff brings his unreasonable delay claims under the Mandamus Act, 28 U.S.C. § 1361, and § 706(1) of the APA. ECF No. 1 ¶¶ 12–32. The Court applies the same legal standard to these claims. *Skalka v. Kelly*, 246 F. Supp. 3d 147, 152 (D.D.C. 2017). In essence, the Court must determine "whether the agency's delay is so egregious as to warrant mandamus." *In re Core Commc'ns, Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008) (citation omitted).

To help guide this inquiry, the D.C. Circuit has laid out a six-factor test:

(1) the time agencies take to make decisions must be governed by a rule of reason;

(2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason;

(3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;

5

(4) the effect of expediting delayed action on agency activities of a higher or com-
peting priority;

(5) the nature and extent of the interests prejudiced by delay; and

(6) the court need not find any impropriety lurking behind agency lassitude in order
to hold that agency action is unreasonably delayed.

*Telecomms. Rsch. & Action Ctr. v. FCC*, 750 F.2d 70, 80 (D.C. Cir. 1984) ("*TRAC*") (cleaned up);

*see also Da Costa v. Immigr. Inv. Program Off.*, 80 F.4th 330, 340 (D.C. Cir. 2023) ("[T]o guide

our unreasonable-delay analysis, we ordinarily look to six non-exclusive *TRAC* factors."). These

factors "are not 'ironclad,' but rather are intended to provide 'useful guidance in assessing claims

of agency delay.'" *In re Core Commc'ns, Inc.*, 531 F.3d at 855 (quoting *TRAC*, 750 F.2d at 80).

Courts often address the factors by addressing them under "four basic inquiries." *Rashidi v. U.S.*

*Dep't of State*, No. 23-cv-1569 (JEB), 2023 WL 6460030, at *4 (D.D.C. Oct. 4, 2023).

"First, is there any rhyme or reason—congressionally prescribed or otherwise—for
an agency's delay (factors one and two)? Second, what are the consequences of
delay if the Court does not compel the agency to act (factors three and five)? Third,
how might forcing the agency to act thwart its ability to address other priorities
(factor four)? Finally, is the delay intentional or due to any impropriety on the part
of the agency (factor six)?"

*Rahman v. Blinken*, No. 22-cv-2732 (JEB), 2023 WL 196428, at *4 (D.D.C. Jan. 17, 2023)

(cleaned up).[3]

---

[3] Plaintiff argues that the Court should not employ the TRAC analysis to evaluate whether
a visa-delay complaint, such as the one here, states a claim. ECF No. 9 at 29–34. But recent D.C.
Circuit precedent makes clear that doing so is appropriate. *See, e.g.*, *Da Costa*, 80 F.4th at 339–
40. And that has been the longtime practice in this District. *See, e.g.*, *Bagherian v. Pompeo*, 442
F. Supp. 3d 87, 95 (D.D.C. 2020); *Ghadami v. DHS*, No. 19-cv-397 (ABJ), 2020 WL 1308376, at
*7–9 (D.D.C. Mar. 19, 2020). "In applying these factors, the Court is not determining whether
there has been an unreasonable delay; rather, it is determining whether plaintiffs' complaint has
alleged facts sufficient to state a plausible claim for unreasonable administrative delay." *Ghadami*,
2020 WL 1308376, at *7 n.6.

1.      *TRAC* **Factors 1 and 2**

The first two TRAC factors are typically considered together.  *Milligan v. Pompeo*, 502 F. Supp. 3d 302, 317 (D.D.C. 2020).  And the first is often considered the "most important."  *In re Core Commc'ns, Inc.,* 531 F.3d at 855.  These factors evaluate "whether the agency's response time complies with an existing specified schedule and whether it is governed by an identifiable rationale."  *Ctr. for Sci. in the Pub. Int. v. FDA*, 74 F. Supp. 3d 295, 300 (D.D.C. 2014).  "Congress has given the agencies wide discretion in the area of immigration processing."  *Skalka*, 246 F. Supp. 3d at 153–54.  And because there is "no set timeline, the Court looks to case law for guidance."  *Dastagir*, 557 F. Supp. 3d at 165.[4]  In *Da Costa*, the D.C. Circuit found a four-and-a-half-year delay not unreasonable.  80 F.4th at 342.  And "[d]istrict courts have generally found that immigration delays in excess of five, six, seven years are unreasonable, while those between three to five years are often not unreasonable."  *Lee v. Blinken*, No. 23-cv-1783 (DLF), 2024 WL 639635, at *5 (D.D.C. Feb. 15, 2024) (citation omitted).  Further, "delays of around two years are usually considered reasonable."  *Noori v. Blinken*, No. 23-cv-1463 (TJK), 2024 WL 939990, at *3 (D.D.C. Mar. 5, 2024); *see also Ghadami v. DHS*, No. 19-cv-397 (ABJ), 2020 WL 1308376, at *8 ("[M]any courts evaluating similar delays have declined to find a two-year period to be unreasonable as a matter of law.").  Because "[c]ourts measure the period of delay from the last government action to the issuance of the opinion," *Nusrat*, 2022 WL 4103860, at *6 n.6, and Plaintiff's consular

---

[4] Plaintiff argues that 8 U.S.C. § 1571(b) supplies the relevant timetable.  ECF No. 9 at 31–32.  Not so.  That statute provides: "It is the sense of Congress that the processing of an immigration benefit application should be completed not later than 180 days after the initial filing of the application."  8 U.S.C. § 1571(b).  "By its plain text, § 1571 applies to Immigration and Naturalization Service, not the State Department, and it governs 'immigration benefit application[s],' not the *non*immigrant visa application at issue here."  *Ahmadi v. Scharpf*, No. 23-cv-953 (DLF), 2024 WL 551542, at *5 n.9 (D.D.C. Feb. 12, 2024).  To the extent it has any impact on the first two factors—or the TRAC factors as whole—it does not tip them in in Plaintiff's favor.

interview took place in April 2023, the delay here comes to about 15 months. As reflected above, that delay falls well within what courts in this jurisdiction have consistently determined not to be unreasonable. That is so even considering delays only in the nonimmigrant visa context. *See Shen v. Pompeo*, No. 20-cv-1263 (ABJ), 2021 WL 1246025, at *8 (D.D.C. Mar. 24, 2021) (holding that a 21-month delay in adjudicating a nonimmigrant visa was not unreasonable).[5] For these reasons, factors one and two, taken together, favor Defendants.

## 2.   *TRAC* Factor 4

The fourth factor "carries the greatest weight in many cases." *Milligan*, 502 F. Supp. 3d at 319. It examines the effect of expediting Plaintiff's application on the agency's other competing priorities. *TRAC*, 750 F.2d at 80. Courts "are generally hesitant to direct agencies which tasks to prioritize, particularly if such intervention would move the petitioner to 'the head of the queue' and 'simply move[] all others back one space.'" *Lee*, 2024 WL 639635, at *6 (quoting *In re Barr Lab'ys, Inc.*, 930 F.2d 72, 75–76 (D.C. Cir. 1991)). In other words, granting expedited agency action is inappropriate when that relief "would necessarily come 'at the expense of other similarly situated applicants'" with "no net gain" in adjudications achieved. *Da Costa*, 80 F.4th at 343–44 (quoting *Am. Hosp. Ass'n v. Burwell*, 812 F.3d 183, 192 (D.C. Cir. 2016), and *In re Barr Lab'ys, Inc.*, 930 F.2d at 75). That is exactly would happen here if Plaintiff receives his requested relief. Ordering consular officials to process his application on his preferred timeline would "necessarily require [the agency] to prioritize [his] application[] 'at the expense of other similarly situated applicants.'" *Rashidi*, 2023 WL 6460030, at *5 (quoting *Da Costa*, 80 F.4th at 344). And this

---

[5] Still, the Court may consider caselaw addressing delays in adjudicating nonimmigrant visa applications, like the one here, as well as immigrant visa applications. *See Sawahreh v. U.S. Dep't of State*, 630 F. Supp. 3d 155, 162 (D.D.C. 2022) (declining to distinguish between treatment of immigrant and nonimmigrant visa applications).

"would erode the ability of agencies to determine their priorities." *Tate v. Pompeo*, 513 F. Supp. 3d 132, 150 (D.D.C. 2021). Factor four thus heavily favors Defendants.

### 3. *TRAC* Factors 3 and 5

Factors three and five involve "the interests prejudiced by delay," including possible effects on "human health and welfare." *TRAC*, 750 F.2d at 80; *see also Didban v. Pompeo*, 435 F. Supp. 3d 168, 177 (D.D.C. 2020) (considering the third and fifth factors in tandem). Plaintiff cites several effects on his human welfare. He seeks a "better future" for his newborn daughter by giving her "the opportunity to grow in the United States." ECF No. 1 ¶ 2. And he wishes "to work at his full potential," including by helping his U.S.-based employer complete difficult projects that require his guidance and supervision. *Id.* ¶¶2–3. The Court is sympathetic to Plaintiff's predicament. Yet he is no different than many others in similar circumstances. *Palakuru v. Renaud*, 521 F. Supp. 3d 46, 53 (D.D.C. 2021) ("While the Court does not doubt that [Plaintiff] has an interest in prompt adjudication, so too do many others facing similar circumstances."). "Thus, these factors largely do not weigh in Plaintiff['s] favor because there is no reason why [his] private interests in 'health and welfare' deserve special treatment relative to other visa applicants' interest in the same." *Noori*, 2024 WL 939990, at *4. And even if they do weigh in his favor to some extent, it is clear "[t]hey do not 'overcome the other factors that weigh strongly in the Government's favor.'" *Dastagir*, 557 F. Supp. 3d at 168 (citation omitted).

### 4. *TRAC* Factor 6

Factor six insists that a plaintiff need not show bad faith or impropriety on the part of the agency to prevail on an unreasonable delay claim. *TRAC*, 750 F.2d at 80. Plaintiff does not allege any bad faith or impropriety, instead only decrying his lack of information about the reasons for a delay. *See, e.g.*, ECF No. 1 ¶ 11 ("Plaintiff has received no meaningful response to his inquiries."). So the Court assesses this factor as neutral. And even if it did weigh in Plaintiff's favor, it, too,

would "not 'overcome the other factors that weigh strongly in the Government's favor.'" *Dasta-gir*, 557 F. Supp. 3d at 168 (citation omitted).

*   *   *

The Court takes notice of the "troubling backlog of petitions waiting for . . . adjudication." *Da Costa*, 80 F.4th at 344.  As the D.C. Circuit has noted, those problems are serious.  *Id.*  But after weighing all the TRAC factors, the Court has little difficulty concluding that Plaintiff has not stated a claim for unreasonable delay of adjudication of his visa application.  In fact—unfortunately—his wait time "pales in comparison to the longer delays other applicants have unsuccessfully challenged in this district." *Mohammad v. Blinken*, 548 F. Supp. 3d 159, 169 (D.D.C. 2021).  In the end, delays "stemming from resource-allocation decisions simply do not lend themselves to judicial reordering of agency priorities." *Milligan*, 502 F. Supp. 3d at 319 (cleaned up).  And Plaintiff offers no reason for the Court to bump him to the front of the line.

## III.   Conclusion

For all the above reasons, the Court will grant Defendants' Motion to Dismiss, ECF No. 8, and dismiss the case.  A separate order will issue.

/s/ Timothy J. Kelly
TIMOTHY J. KELLY
United States District Judge

Date: July 11, 2024